DOWNEY BRAND LLP
CLIFTON J. MCFARLAND (Bar No. 136940)
NICOLE E. GRANQUIST (Bar No. 199017)
GREGORY T. BRODERICK (Bar No. 220871)
555 Capitol Mall, Tenth Floor
Sacramento, CA  95814-4686
Telephone:     (916) 444-1000
Facsimile:     (916) 444-2100
cmcfarland@downeybrand.com
ngranquist@downeybrand.com
gbroderick@downeybrand.com

Attorneys for Defendant
Oldcastle Precast, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>                     Plaintiff,<br><br>          v.<br><br>OLDCASTLE PRECAST, INC., a corporation,<br><br>                     Defendant. | Case No.  2:07-cv-02534-WBS-JFM<br><br>**NOTICE OF SETTLEMENT [L.R. 16-160]** |

TO THIS COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE pursuant to Local Rule 16-160(a) that the parties anticipate a settlement resolving all claims in this action.  A copy of that signed settlement agreement is attached hereto as Exhibit 1.  The settlement is contingent upon the expiration of the federal agency 45-day review period.[1]

PLEASE TAKE FURTHER NOTICE that, in accordance with federal law, no judgment disposing of this action may be entered prior to 45 days following the receipt of the proposed

---

[1]  Title 33 of the United States Code, Section 1365(c) provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45-days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator."

956998.1                                                   1

1    settlement agreement by the United States Department of Justice and the national and Region IX

2    offices of the United States Environmental Protection Agency.  *See* 40 C.F.R. § 135.5 (requiring

3    the parties to provide notice to the court of the 45-day agency review period under 33 U.S.C. §

4    1365(c)).  Such notice was mailed to the agencies on September 29, 2008.  The regulatory

5    agencies' review period will end by approximately November 20, 2008 (allowing forty-five days

6    for agency review and approximately five days for mailing time).  If any of the reviewing

7    agencies object to the proposed agreement, the parties would require additional time to meet and

8    confer and attempt to resolve the agencies' concerns.

9        Local Rule 16-160(b) requires the parties expect to file a stipulation for dismissal with

10   prejudice with the Court within 20 days of this notice, "absent good cause."  Given the statutorily

11   mandated 45-day review period, the parties submit that good cause exists to set December 1,

12   2008, as the date by which a Stipulation for Approval of Consent Agreement and Dismissal of

13   Plaintiff's Claims With Prejudice or a Notice that the settlement is null and void, must be filed.

14   DATED:  September 29, 2008                    DOWNEY BRAND LLP

15

16                                                By:_____

17                                                    GREGORY T. BRODERICK
                                                     Attorney for Defendant
18                                                   OLDCASTLE PRECAST, INC.

19

20

21

22

23

24

25

26

27

28

956998.1

2

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and Oldcastle Precast, Inc., (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the rivers, creeks, and tributaries of the San Joaquin River and Sacramento-San Joaquin Delta;

**WHEREAS**, Oldcastle Precast, Inc., is a corporation organized under the laws of the State of Washington that owns and operates a precast concrete production facility located at 2960 S. Highway 99, Stockton, CA 95215 (the "Facility"). The Facility is covered by State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about August 8, 2007, CSPA provided Oldcastle Precast, Inc., with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on November 26, 2007, CSPA filed its Complaint in the United States District Court for the Eastern District of California against Oldcastle Precast, Inc., (*California Sportfishing Protection Alliance v. Oldcastle Precast Inc.,* Case No. 2:07-cv-02534-WBS-JFM);

1

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

WHEREAS, Oldcastle Precast, Inc., denies any and all of the claims made in CSPA's 60-Day Notice Letter and Complaint;

WHEREAS, CSPA and Oldcastle Precast, Inc., through their authorized representatives and without either adjudication of CSPA's claims or admission by Oldcastle Precast, Inc., of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

WHEREAS, CSPA and Oldcastle Precast, Inc., have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Oldcastle Precast, Inc., hereby agree as follows:

## EFFECTIVE DATE

1.     The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2.     **Stipulation to Dismiss With Prejudice and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 19 below, CSPA shall file a Stipulation to Dismiss With Prejudice and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) with the United States District Court for the Eastern District of California ("District Court"), with this AGREEMENT attached as Exhibit 1 thereto, specifying that CSPA is dismissing with prejudice all claims in CSPA's Complaint. Consistent with Paragraphs 25 and 26 herein, the Stipulation to Dismiss with Prejudice and [Proposed] Order shall state that the District Court will maintain jurisdiction through the

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

952520.1

Termination Date, for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

## COMMITMENTS OF OLDCASTLE PRECAST, INC.

3.     **Compliance with General Permit.** Oldcastle Precast, Inc., agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4.     **Mitigation Payment.** In recognition of the good-faith efforts by Oldcastle Precast, Inc., to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Oldcastle Precast, Inc., of any penalties and costs which may have been assessed in this action if it had proceeded to trial, Oldcastle Precast, Inc., agrees to pay the sum of thirty-five thousand dollars ($35,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects within the Sacramento-San Joaquin River Delta, including waters in and around the City of Stockton, relating to water quality improvements in the area. Such projects may include, for example, the University of the Pacific's *Arundo donax* eradication and research project more fully described in Exhibit B, provided that an appropriate grant application is submitted to the Rose Foundation. Final authority on the selection of any project shall rest with the Rose Foundation. Payment to the Rose Foundation shall be made by Oldcastle Precast, Inc., within thirty (30) calendar days of the District Court's entry of the Order described in Paragraph 2 of this AGREEMENT or the date on which Oldcastle is provided with the Rose Foundation's W-9 tax form, whichever is later. It shall be Oldcastle's obligation to request the W-9 tax information from the Rose Foundation. Payment by Oldcastle Precast, Inc., shall be made in the form of a single check payable to the Rose Foundation. The Rose Foundation will notify Oldcastle upon expending the funds, or any part of them, and shall not retain more than ten percent of the total funds for overhead/administration costs.

3

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

952520.1

5.     **Implemented Storm Water Controls**. Oldcastle Precast, Inc., shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT.

6.     **Best Management Practices.** Oldcastle Precast, Inc., agrees to implement the following Best Management Practices (BMPs) as soon after the Effective Date of this AGREEMENT as is practicable, and no later than sixty (60) calendar days of the District Court's entry of the Order dismissing with prejudice described in Paragraph 2 of this AGREEMENT:

a.     Construct a retention basin of at least 1,300,000 gallons and appropriate appurtenances, including re-routing the storm drain system such that it only discharges to the retention pond, to retain stormwater on-site resulting from a 25-year, 24-hour storm event. Construction of the retention basin shall be completed by December 31, 2008. Upon completion and after the first major rain event, Oldcastle Precast, Inc. shall send CSPA electronic photographs of the basin.

b.     By December 31, 2008, construct and maintain a berm around the perimeter of the facility, from southwest at the intersection of Oldcastle's property line and Branch Creek, north along Duck Creek, then east to Mariposa Road, and then southeast along Mariposa Road to the facility's new entrance. Such berm shall be at least two feet in height to assist in retaining stormwater on site;

c.     Maintain the pylon and straw waddle BMP at all borders of the facility until such time as the retention basin described above is operational.

d.     Until such time as the retention basin is operational, build up the soil on either side of the concrete pylons to prevent water from channeling beneath the pylons and reduce erosion, monitor such BMPs for erosion, and adjust such BMPs to eliminate or reduce erosion to the degree practicable;

e.     Until such time as the retention basin is operational, ensure that all hay bales, waddles, and other filtration devices surrounding drain inlets are keyed into the ground and that

4

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

there are no separations or splits through which water can flow, to avoid channeling water around the filter matrices;

f.      Install fabric sedimentation filters in each operating drain inlet, and replace all filters no less than each year prior to the wet season (October 1 through May 30);

g.      Maintain and/or replace all drain inlet filters on all operating storm drains as needed, and no less than once prior to or during each wet season;

h.      Ensure that no trucks or other vehicles are parked above operating drain inlets during the wet season (October 1 through May 30);

i.      Employ a mechanical or regenerative sweeper as needed to reduce sediment on all paved surfaces exposed to industrial operations during the wet season (October 1 through May 30).

j.      At least once during each wet season (October 1 through May 30), Oldcastle Precast, Inc., shall conduct wet weather observations of the entire perimeter of the Facility to determine whether there are additional discharge locations;

7.      **Additional Monitoring.**  During the 2008-2009 and 2009-2010 rainy seasons, in addition to the minimum monitoring requirements of the General Permit, Oldcastle Precast, Inc., agrees to perform the following monitoring:

a.      Oldcastle Precast, Inc., agrees to sample a total of three (3) qualifying events (as defined by General Permit, Section B, ¶5(a)-(b)); provided that Oldcastle Precast, Inc., is excused from this obligation if there are less than three (3) qualifying events, in which case Oldcastle Precast, Inc., shall sample all qualifying events.

b.      For each significant rain event occurring during the 2008-2009 and 2009-2010 rainy seasons that results in any discharge from the Facility during regularly scheduled operating hours, Oldcastle Precast, Inc., shall conduct visual observations of all known and suspected storm water discharge locations, including the entire perimeter of the Facility and the discharge

5

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

point of the retention basin, if any. Oldcastle Precast, Inc. shall take a representative photograph of any discharges from the retention basin.

c.      Oldcastle shall ensure that the Facility's stormwater structures and BMPs are maintained and kept in good repair.

d.      During each of its monthly wet weather storm inspections required by the General Permit, Oldcastle Precast, Inc., shall take representative photographs of discharges from any location where storm water is being released, including the retention basin, and BMPs installed in that area pursuant to this Agreement. This obligation shall only apply if there is a discharge of stormwater during the inspection.

e.      All photographs required by this Settlement Agreement shall be in color and electronically formatted. Each photograph shall be identified by date and the location of the Facility being photographed. Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via compact disc(s).

8.      **Monitoring Results.** Results from Oldcastle Precast, Inc.'s sampling and analysis during the term of this AGREEMENT shall be provided to CSPA within 30 days of receipt of the sampling results by Oldcastle Precast, Inc.

9.      **Sampling for Constituents.** Oldcastle Precast, Inc., shall test each sample collected under this AGREEMENT for the following parameters: (a) pH; (b) Total Suspended Solids (TSS); (c) Oil & Grease or Total Organic Carbons; (d) Specific Conductance; and (e) Iron.

10.     **Meet and Confer Regarding Exceedance of Levels of Potential Concern.** If analytical results of storm water samples taken by Oldcastle Precast, Inc., during the 2008-2009, and/or 2009-2010 rainy season indicate that storm water discharges from the Facility exceed the following Levels of Concern

6

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

> Total Suspended Solids: 100 mg/L;
> Specific Conductance: 200 μmhos/cm;
> Oil & Grease: 15 mg/L;
> pH: 6.0-9.0 s.u.;
> Total Organic Carbon: 110 mg/L;
> Iron: 1.0 mg/L;

Oldcastle Precast, Inc. agrees to take additional feasible measures, if any, aimed at reducing pollutants in the Facility's storm water to levels at or below these levels.

In furtherance of that objective, Oldcastle Precast, Inc., shall prepare a written statement ("Memorandum") discussing:

    (1)  any exceedance or exceedances;

    (2)  an explanation of the possible cause(s) and/or source(s) of any exceedance; and

    (3)  additional feasible best management practices, if any, that will be taken to further reduce the possibility of future exceedance(s).

Any such Memorandum shall be transmitted to CSPA not later than August 1 following the conclusion of the rainy season.

11.     Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than the beginning of the next rainy season (October 1), except where 1) structural changes require a longer time to complete or 2) the SETTLING PARTIES agree in writing (including via e-mail) to defer implementation of specific measures in order to effectively meet and confer in accordance with paragraph 11. Within thirty (30) days of implementation, Oldcastle Precast, Inc.'s SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

12.     Upon receipt of the Memorandum, CSPA may review and comment on any additional measures. If requested by CSPA within 21 days of receipt of such Memorandum, CSPA and Oldcastle Precast, Inc., shall meet and confer and conduct a site inspection within 60-

7

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

days after the due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water discharge to levels at or below the Levels of Concern.  If within 21-days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Court assigned to this action pursuant to Paragraphs 24 and 25 below.  If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the Court consistent with Paragraphs 24 and 25 below.

13.     Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures implemented by Oldcastle Precast, Inc., shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria or any Level of Concern.

14.     In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Oldcastle Precast, Inc., shall permit representatives of CSPA to perform one (1) additional site visit per rainy season to the Facility during normal daylight business hours during the term of this AGREEMENT; provided that CSPA provides Oldcastle Precast, Inc., via e-mail with at least seven days prior written notice.  If the date and/or time selected by CSPA is not acceptable to Oldcastle, then Oldcastle shall respond by proposing three dates and times within ten business days, from which CSPA may accept a date for the inspection. On agreement of both parties, any other date and time may be chosen for the inspection.

15.     **Provision of Documents and Reports.**  During the life of this AGREEMENT, Oldcastle Precast, Inc., will provide CSPA a copy of all documents submitted to the Regional Water Quality Control Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed to CSPA contemporaneously with submission to the Regional Board and/or State Board.  Oldcastle Precast, Inc. also shall provide CSPA a copy of

8

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

all documents referenced in this AGREEMENT, including but not limited to photographs, or analyses, within 7 days of a written request (via e-mail or regular mail) by CSPA unless Oldcastle has previously provided the document to CSPA under this AGREEMENT.

16.     **Amendment of SWPPP.**  Within sixty (60) days of the Effective Date of this AGREEMENT, Oldcastle Precast, Inc. shall amend the Facility's Storm Water Pollution Prevention Plan ("SWPPP") to incorporate all changes, improvements, and best management practices set forth in or resulting from this AGREEMENT.  A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

17.     **Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Oldcastle Precast, Inc., shall pay CSPA the sum of thirty-six thousand dollars ($36,000.00).  Payment to CSPA shall be made in the form of a single check payable to "Lozeau Drury LLP Attorney-Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.  Such payment shall be made within thirty (30) calendar days after the later of the following events:  (a) the District Court's entry of the Order dismissing with prejudice described in Paragraph 2 of this AGREEMENT; or (b) CSPA provides Oldcastle Precast, Inc., with a copy of the W-9 form for the entity to which the check shall be written.

18.     **Compliance Oversight Costs**:  As reimbursement for CSPA's future costs that will be incurred in order for CSPA to monitor Oldcastle Precast, Inc.'s compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, Oldcastle Precast, Inc. agrees to reimburse CSPA for costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding two thousand dollars ($2,000.00) per rainy season.  Costs reimbursable pursuant to this paragraph may include, but are not limited to, costs by CSPA or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of Oldcastle Precast, Inc.,

9

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. Up to three annual payments (one addressing any monitoring associated with the 2008-2009 rainy season and one addressing monitoring associated with the 2009-2010 rainy season) shall be made payable to Lozeau Drury LLP Attorney-Client Trust Account within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months. Such invoice shall be submitted to Oldcastle no later than September 1 following the rainy season for which any cost is incurred.

19.   **Review by Federal Agencies.**  Oldcastle Precast, Inc., shall submit this AGREEMENT to the U.S. EPA ("EPA") and the U.S. Department of Justice ("DOJ") (hereinafter, the "Agencies") via certified mail, return receipt requested, within ten (10) calendar days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) calendar days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to CSPA upon receipt by Oldcastle Precast, Inc. In the event that any Agency objections to the provisions of this AGREEMENT cause the District Court not to dismiss the case with prejudice, the SETTLING PARTIES agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If the SETTLING PARTIES are unable to resolve any issue(s) raised by the Agencies in their comments, the SETTLING PARTIES agree to expeditiously seek a conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## TERMINATION DATE OF AGREEMENT

20.   This AGREEMENT shall terminate on December 15, 2010.

10

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

## NO ADMISSION OR FINDING

21.     Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

22.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

23.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

11

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

952520.1

24.    For the period beginning on the Effective Date and ending on the Termination Date, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against Oldcastle Precast, Inc., or its officers, directors, employees, agents, affiliates, assignees, parent companies, or subsidiaries, seeking relief for alleged violation of the Clean Water Act or violations of the General Permit.  CSPA further agrees that, beginning on the Effective Date and ending on the Termination Date, CSPA will not support other lawsuits, by providing financial assistance, personnel time, or any other affirmative actions, against Oldcastle Precast, Inc., or its officers, directors, employees, agents, affiliates, assignees, parent companies, or subsidiaries, that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge Oldcastle Precast, Inc.'s (or its officers, directors, employees, agents, affiliates, assignees, parent companies, or subsidiaries) compliance with the Clean Water Act or the General Permit.

## DISPUTE RESOLUTION PROCEDURES

25.    Any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure.  The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT.  In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Court to which this matter is then assigned.  In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Court, the SETTLING PARTIES agree to submit the dispute via motion to the Court.

26.    In resolving any dispute arising from this AGREEMENT, the Judge shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Judge.

12

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

952520.1

The SETTLING PARTIES agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

27.    **Impossibility of Performance.**  Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) calendar days of the date that the failure becomes apparent, and shall describe the reason for the non-performance.  The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established by agreement of the parties.  In the event that the SETTLING PARTIES cannot timely agree, either SETTLING PARTY shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

28.    **Construction.**  The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

29.    **Choice of Law.**  This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

30.    **Severability.**  In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

13

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

31.    **Correspondence.** All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

Bill Jennings,                                          Michael R. Lozeau
Executive Director                                   Douglas J. Chermak
California Sportfishing Protection Alliance      Lozeau Drury LLP
3536 Rainier Road                                   1516 Oak Street, Ste 216
Stockton, CA  95204                               Oakland, CA 94501
Tel: (209) 464-5067                                Tel: (510) 749-9102
deltakeep@aol.com                               michael@lozeaudrury.com
                                                         doug@lozeaudrury.com


If to Oldcastle Precast, Inc.:

Cy Thompson                                         Carl Wuitschick
General Manager                                    Environmental Officer
California Concrete Pipe                           Oldcastle Precast, Inc.
2960 S. Highway 99                               2820 A Street S.E.
Stockton, CA 95215                               Auburn, WA  98002

And to:

Clifton J. McFarland
Gregory T. Broderick
Downey Brand LLP
555 Capitol Mall, 10th Floor
Sacramento, CA 95814
Tel:  (916) 444-1000
cmcfarland@downeybrand.com
gbroderick@downeybrand.com

Notifications of communications shall be deemed submitted on the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the SETTLING PARTIES may agree to transmit documents electronically or by facsimile.

14

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

32.    **Counterparts.** This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, .pdf, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

33.    **Assignment.** Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

34.    **Modification of the AGREEMENT:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

35.    **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

36.    **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

37.    **Negotiated Agreement.** The SETTLING PARTIES have negotiated this AGREEMENT, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this AGREEMENT and any uncertainty and ambiguity shall not be interpreted against any one party.

15

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

952520.1

38.   Authority.  The undersigned representatives for CSPA and Oldcastle Precast, Inc., each certify that he is fully authorized by the party whom he represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: September 23, 2008              OLDCASTLE PRECAST, INC.

                                     By: Cy Thomson
                                     General Manager, California Concrete Pipe

Date: September 24, 2008             CALIFORNIA SPORTFISHING PROTECTION
                                     ALLIANCE

                                     By: Bill Jennings
                                     Executive Director

APPROVED AS TO FORM:

Date: September 25, 2008             For DEFENDANT
                                     DOWNEY BRAND LLP

                                     By:   Clifton J. McFarland, Esq.

Date: September 25, 2008             For PLAINTIFF
                                     LOZEAU DRURY LLP

                                     By:   Michael R. Lozeau, Esq.

16

SETTLEMENT AGREEMENT: CSPA V. OLDCASTLE PRECAST, INC.

# Exhibit A





# Exhibit B

## Proposed Supplemental Environmental Project

Professor Greg Anderson of the University of the Pacific is conducting a groundbreaking *Arundo donax* research and eradication project in and around Stockton, but is in need of funding for his project. Arundo is a bamboo-like, perennial grass and is a notoriously aggressive threat to warm freshwater ecosystems (Polunin and Huxley 1987). Establishing by rhizomes, it spreads clonally and quickly displaces native vegetation (Khudamrongswat et al. 2004). Arundo is placed among the fastest growing terrestrial plants (nearly 10 cm/day (Dudley 2000)), and it is reported to use three times more water than native vegetation per unit of biomass (Else 1996). These properties set the stage for substantial modification of physical and chemical characteristics of an ecosystem including accelerating fire cycles and deterring flood prevention (Bell 1997; Dudley 2000).

Currently, management authorities in the United States are spending large amounts of money attempting to control invasions in California (Dudley 2000). Fortunately for land managers, the seeds produced by *Arundo* in California are seldom, if ever, fertile. As such, spread, and therefore management, of giant reed is essentially an intra-basin and downstream phenomenon, meaning that it is controllable.

Professor Anderson and his team of graduate students at the University of the Pacific have developed a good method for eradicating the invasive plant but needs further funding for his graduate students to continue testing, applying, and refining the method in the Stockton area, including in streams with anadromous fish populations.